IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Richard Bishop, | ) | C/A No.1:10-2714-TMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Michael J. Astrue, Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether he applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative action.

I.    Relevant Background

A.    Procedural History

Plaintiff applied for DIB[1] on March 22, 2007,[2] alleging he became disabled on May 28, 2002,[3] as the result of back problems, high blood pressure, depression and anxiety. Tr. at 177–79, 205, 209. His application was denied initially and on reconsideration. Tr. at 154–57 (initial), 163–64 (recon.). At Plaintiff's request, Administrative Law Judge ("ALJ") Ivar E. Avots conducted a hearing on April 17, 2009, at which Plainitff and a vocational expert ("VE") testified. Tr. at 72–130. On October 23, 2009, the ALJ conducted another hearing at which VE Benson Hecker testified (Tr. at 32–52) because the April 17, 2009 VE testimony did not address Plaintiff's vocational profile. *See* Tr. at 35–37, Def.'s Br. at 2 n.3. The ALJ issued an unfavorable decision on January 29, 2010. Tr. at 13–24.

---

[1]Plaintiff also filed an application for supplemental security income ("SSI"), but neither the ALJ nor Plaintiff references that application, and the Commissioner notes that it "appears that [Plaintiff's] application for SSI was withdrawn." Def.'s Br. at 2 n.2. *See* Tr. 173–76 (SSI application) Tr. at 13 (ALJ's decision, referencing only Plaintiff's DIB application), Pl.'s Br. at 3 (referencing DIB application only).

[2]The ALJ and the parties indicate Plaintiff protectively filed his application on March 22, 2007. *See* Tr. at 13, Pl.'s Br. at 3, Def.'s Br. at 2. The application of record is dated March 28, 2007. Tr. at 177–79, *but see* Tr. at 205 (Field Office Disability Report listing March 22, 2007 as Plaintiff's protective filing date).

[3]In his application, Plaintiff alleged he became disabled on May 28, 2002. Tr. at 177. In a Field Office Disability Report, Plaintiff's alleged onset date is listed as December 19, 2003, which is the alleged onset date identified by the ALJ, Plaintiff, and the Commissioner. Tr. at 13, 205, Pl.'s Br. 3, Def.'s Br. at 2.

2

On March 1, 2010,[4] Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision. Tr. at 8. Plaintiff's counsel submitted a brief and additional medical records to the Appeals Council for consideration. *See* Tr. at 4, 5.

On August 27, 2010, the Appeals Council denied Plaintiff's request for review of the ALJ's unfavorable decision. Tr. at 1–6. The Appeals Council indicated it had considered the reasons Plaintiff disagreed with the ALJ's decision and the additional evidence, which evidence was made part of the administrative record. Tr. at 1 (Appeals Council denial), at 4–5 (Appeals Council ex. list and order making add'l exs. part of record). The Appeals Council further stated it found the additional information did not provide a basis for changing the ALJ's decision. Tr. at 2. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on October 21, 2010. [Entry #1].

B.     The Administrative Proceedings

1.     The Administrative Hearing

a.     Plaintiff's Testimony

At the April 17, 2009 hearing, Plaintiff testified that he lived with his wife and that he last worked in December 2003, when he injured his back on the job. Tr. at 76, 79–80. He testified that he graduated from high school, at which he received vocational training. Tr. at 76–77. He said he could not read and write well. Tr. at 77. He said he had a driver's

---

[4]Plaintiff requested review on March 1, 2010; SSA received Plaintiff's request for review on March 3, 2010. Tr. at 8.

license and sometimes drove to the grocery store near his home. Tr. at 78–79. He said he was always conscious of pain in his back and legs and sometimes would lay down one to two hours a day to help control his pain, although that did not completely relieve his pain. Tr. at 90–91. He also testified to spending two or three hours per day in a recliner resting his legs. Tr. at 95. He said he spent his days alternating between walking around in the yard and sitting down and resting. Tr. at 103. He said he had not been able to do his hobbies of golf, hunting, and fishing since 2002. *Id.* He said pain made it difficult for him to sleep and that he did "some housework" including laundry, cooking that did not require much standing, and washing small amounts of dishes. Tr. at 104–06. He testified that he tried to do yard work and had cut the grass using a riding lawnmower the previous week. Tr. at 108–09.

He testified that he broke his ankle in 2002 and that he regularly had ankle pain. Tr. at 90–92. He said that a car wreck caused a shoulder injury and that he had undergone two left shoulder surgeries. Tr. at 95–96. He also had surgery on his right wrist, which left him with no strength in that wrist. Tr. at 96–97. He said he remained limited in his shoulder use and had no strength to pick anything up because he would "run out of strength." Tr. at 97. He stated that he could not use his left arm to reach overhead or for pushing or pulling, and that he had pain in his left shoulder all of the time. *Id.* He testified that he could lift 20 or 30 pounds without bothering his back, and could probably lift ten pounds with his left shoulder. Tr. at 101. He said he had problems reaching overhead,

pushing, and pulling, and that he could not bend without pain and could not crawl. Tr. at 102–03. He said he took Ultram for his pain, which he rated as an 8/10. Tr. at 107.

b.    VE Testimony[5]

At the October 23, 2009 hearing, VE Benson Hecker testified that Plaintiff's past relevant work ("PRW") as a dye cutter, electrical helper, electrical contractor, maintenance farm, and truck driver were all of medium exertion and that these jobs had no transferable skills. Tr. at 39.

The ALJ asked the vocational expert to consider a hypothetical individual of Plaintiff's age (43 years old as of his date last insured), education, and work history, with the following residual functional capacity ("RFC"): limited to sedentary work with no overhead reaching or frequent bending, and a limitation to simple, routine, repetitive work to maybe even some detailed work, an inability to climb a ladder, rope or scaffold, a limitation to climbing ramps or stairs only occasionally, a limitation to occasional stooping, occasional crouching, frequent balancing, kneeling, and crawling, and avoidance of concentrated hazards. Tr. at 40–44. The VE found such a person could not perform Plaintiff's PRW, but that there were jobs the person could perform, which he identified. Tr. at 40–41. The ALJ added to the initial hypothetical and asked VE to consider such a hypothetical person who could perform unskilled, sedentary work and could stand and/or walk two hours of an eight-hour work day; sit six hours in an eight-

_____

[5]The record also contains the report of VE Randy Adams, which Plaintiff submitted. *See* Tr. at 442–50 (Rpt. of VE Adams).

hour work day; occasionally stoop, crouch, and climb ramps and stairs, but never climb ladders, ropes and scaffolds; frequently balance, kneel, and crawl; should never engage in bilateral overhead reaching; should avoid concentrated exposure to hazards; and was limited to simple, routine, and repetitive tasks. Tr. at 40–44. The VE testified that such an individual could not perform Plaintiff's PRW, but could perform unskilled sedentary jobs, such as sorter (472,900 jobs nationwide and 11,480 jobs in the state), assembler (288,480 jobs nationwide and 1,220 in the state), and surveillance monitor (9,030 jobs nationwide according to the *Dictionary of Occupational Titles*, and 75 to 100 in the state, according to the VE). Tr. at  44–45.

The VE asked an additional hypothetical that considered a limitation to Plaintiff's arm use that Plaintiff alleges the ALJ improperly overlooked in his decision. The ALJ asked the VE to assume someone of Plaintiff's age, education, and PRW, who could not reach overhead bilaterally, and to further assume only the limitations found in the March 13, 2007 functional capacity evaluation ("FCE") prepared by Healthsouth physical therapist ("PT") Kristin Lovett. Tr. at 45–48; Tr. at 933–42 (FCE). The ALJ asked the VE to review the FCE limitations, which provided for a person who could perform medium work with constant sitting, frequent standing, and occasional walking, with limited[6] use

---

[6]The record copy of the FCE chart (page 3 of the FCE form) does not include a heading over the column relating to Plaintiff's reaching abilities. *See* Tr. at 936. However, in the FCE's narrative conclusions on page 1 of the form, PT Lovett describes Plaintiff's limitations as including "limited use of right arm for shoulder height and overhead reaching." Tr. at 934; *see also* Tr. at 46–47.

of the right arm for shoulder height and overhead reaching. Tr. at 45; *see* Tr. at 934–36.

The ALJ also added the limitations of no climbing of ladders, ropes, or scaffolds, and no

overhead reaching bilaterally. Tr. at 46. The VE opined that there was no work such an

individual could perform, even if he considered the same limitations at the sedentary level

of exertion. *Id.* The VE explained that he interpreted the PT's opinion that Plaintiff had

"limited use of right arm for shoulder height and overhead reaching" (Tr. at 934) as

meaning he could "only occasionally" reach shoulder height and overhead. Tr. at 45–48.

He explained that, at sedentary levels, working from a bench, the individual would "be

required to use his bilateral upper extremities at table- or shoulder-height to perform work

activity and have his upper extremities function independently." Tr. at 46. The VE added

that this meant the individual's right extremity would not be "resting on the table." *Id.*

When asked by the ALJ whether his opinion would change if the hypothetical individual

could use his upper extremities frequently, the ALJ opined he could do the identified jobs

of sorting, assembly, and surveillance monitor. Tr. at 51.

        2.      The ALJ's Findings

In his January 29, 2010 decision, the ALJ made the following findings of fact and

conclusions of law:

    1.      The claimant last met the insured status requirements of the Social Security
            Act on December 31, 2008.

    2.      The claimant did not engage in substantial gainful activity during the period
            from his alleged onset date of December 19, 2003 through his date last
            insured of December 31, 2008 (20 CFR 404.1571 *et seq.*).

3.    Through the date last insured, the claimant had the following severe combination of impairments: status post L5-S1 laminectomy, degenerative disc disease, degenerative joint disease, rotator cuff tear, obesity, depression and anxiety (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary exertional work as defined in 20 CFR 404.1567(a) with some other limitations. I specifically find the claimant can lift and carry up to 10 pounds at a time. I also find that he can stand and walk for two hours of an eight hour work day. I find that he can sit for six hours of an eight hour work day. I find that he can occasionally climb ramps and stairs, but can never climb ladders, ropes and scaffolds. I find that he can frequently balance, kneel and crawl; but can occasionally stoop and crouch. I find that he should avoid concentrated exposure to hazards. I further find that he should never engage in bilateral overhead reaching, and that he is also limited to simple, routine and repetitive tasks.

6.    In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4P and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

7.    Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

8.    The claimant was born on May 12, 1965 and was 43 years old, which is defined as a younger individual age 18–44, on the date last insured (20 CFR 404.1563).

9.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

8

10.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11.    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

12.    The claimant was not under a disability, as defined in the Social Security Act, at any time from December 19, 2003, the alleged onset date, through December 31, 2008, the date last insured (20 CFR 404.1520(g)).

Tr. at 15–24.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:  1) the ALJ did not properly evaluate the evidence in determining there was work Plaintiff could perform despite his shoulder and arm impairments; 2) the Appeals Council erred by failing to explain the weight it gave additional evidence and the reasons it denied Plaintiff's request for further review; 3) the ALJ improperly ignored the evidence of VE Randy Adams; 4) the ALJ improperly discounted Plaintiff's credibility; and 5) the ALJ improperly relied on the internally-contradictory testimony of VE Hecker. The Commissioner counters that substantial evidence supports the ALJ's findings and that neither the ALJ nor the Appeals Council committed legal error in finding Plaintiff was not disabled during the period at issue.

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[7] (4) whether such

_____

[7]The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those]

impairment prevents claimant from performing PRW; and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v.*

---

criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

11

*Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the

12

Commissioner's findings, and that his conclusion is rational.  *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision."  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

Plaintiff's allegation regarding the additional evidence proffered to the Appeals Council may impact the analysis of other issues he raises on appeal, so the court considers that issue first. In its August 27, 2010 denial of Plaintiff's request for review of the ALJ's unfavorable decision, the Appeals Council indicated it had considered the reasons Plaintiff disagreed with the ALJ's decision and the additional evidence he submitted and found no basis for changing the ALJ's decision. Tr. at 1–6.

Plaintiff argues that the additional evidence he submitted, particularly the November 6, 2009 report of his orthopedist, Michael J. Kissenberth, M.D., regarding limitations on his shoulder use, was new and material and that the Appeals Council erred by not explaining the weight it gave the new evidence or the reasons it denied Plaintiff's request for further review. Pl.'s Br. at 28–29. Plaintiff further submits that the court may consider Dr. Kissenberth's additional decision and determine the ALJ's decision is not supported by substantial evidence. *Id.* at 29–32.

13

In response, the Commissioner argues that the Appeals Council was not required to explain its reasons for finding Plaintiff's additional evidence did not change the ALJ's finding of nondisability. Def.'s Br. at 20–22. Further, he argues the November 2009 report of Dr. Kissenberth need not be considered because it was rendered after Plaintiff's insured status expired and is not new and material. *Id.* at 20–22. The Commissioner also requests that, if the court contemplates remand based on the Appeals Council's alleged error, the court hold its decision in abeyance instead, in anticipation of the Fourth Circuit's "upcoming decision on this very issue." *Id.* at n.15.

A summary of Plaintiff's shoulder treatment sets the stage for consideration of the November 2009 opinion and Plaintiff's argument.

### 1.    Plaintiff's Shoulder Treatment by Dr. Kissenberth

On May 16, 2008, Plaintiff was in an automobile accident and went to the emergency room complaining of pain in his neck and left shoulder and pain/weakness in his low back. Tr. at 713–14. On June 10, 2008, Plaintiff saw Kyle Cassas, M.D. with complaints of left shoulder pain that he reported having since the May 16, 2008 accident. Tr. at 682–83. Dr. Cassas diagnosed Plaintiff with shoulder pain and subacromial impingement and injected Plaintiff's shoulder with cortisone. *Id.* He saw Dr. Cassas again on July 1, 2008, with continued complaints of left shoulder pain he rated as a 10/10. Tr. at 746. Dr. Cassas noted Plainitff had received another injection on June 23, 2008, observed that Plaintiff's pain was fairly significant, and referred him to Dr. Kissenberth for a surgical opinion and further care. Tr. at 746–47.

14

Dr. Kissenberth first saw Plaintiff in July 2008, at which time Plaintiff recounted his May automobile accident, including Dr. Cassas's giving him a subacromial injection, which provided some relief to his shoulder pain. Tr. at 743. Plaintiff told him that he had reinjured his shoulder when cranking a boat motor. *Id.* After examination, Dr. Kissenberth scheduled Plaintiff for surgery, and, on July 31, 2008, he performed an arthroscopic chondroplasty, microfracture, labral repair, biceps tenotomy, and decompression on Plaintiff's left shoulder. Tr. at 744, 702–03.

Dr. Kissenberth saw Plaintiff again on September 22, 2008,[8] reporting pain of an 8/10 because of shoulder strain caused when he "lifted up a female at the ball game." Tr. at 739. On examination, Plaintiff had pain with shoulder motion, and Dr. Kissenberth indicated he was pleased with the shoulder motion Plaintiff had regained with surgery. *Id.* Dr. Kissenberth administered a steroidal injection intra-articularly, which he hoped would ease Plaintiff's symptoms. Tr. at 740.

On October 27, 2008, Plaintiff saw Dr. Kissenberth and reported pain a 6/10, which was improved from his pre-surgery pain level. Tr. at 737. Dr. Kissenberth noted Plaintiff was doing well postoperatively, overall, and prescribed Ultram ER for pain. Tr. at 737–38.

On December 8, 2008, Plaintiff returned to Dr. Kissenberth, reporting continued shoulder pain that he rated as a 7/10 and as not being satisfactorily controlled. Tr. at 735.

---

[8]The ALJ mistakenly referred to this visit as being in September 2009. *See* Tr. at 18, 22.

15

Dr. Kissenberth noted Plaintiff was doing well after surgery, but that he had reinjured his shoulder and had complaints of pain with overhead lifting. Tr. at 735. Dr. Kissenberth's assessment indicated he suspected an underlying rotator cuff injury, for which he ordered an MRI, and he prescribed Lortab for pain. Tr. at 736.

On December 19, 2008, Plaintiff saw Dr. Kissenberth for recheck of his shoulder and rated his pain as an 8/10. Tr. at 952. Dr. Kissenberth noted Plaintiff's MRI showed an intact rotator cuff tear and, on examination, found Plaintiff had pain with forced abduction external rotation and when loading his glenoid. *Id.* Dr. Kissenberth found Plaintiff's options were limited unless another surgery was performed, but he determined that surgery was not appropriate at the time. Tr. at 953. He prescribed a series of intra-articular injections for symptom relief, the first of which he administered at the December 19, 2008 visit. Tr. at 953.

On December 29, 2008, Plaintiff returned to Dr. Kissenberth reporting pain as an 8/10. Tr. at 950. Dr. Kissenberth found Plaintiff appeared well and was in no acute distress, assessed shoulder pain and subacromial impingement, prescribed Lortab, gave an injection, and scheduled another for the following week. Tr. at 950–51.

After Plaintiff's insured status expired on December 31, 2008, Plaintiff continued to see Dr. Kissenberth for shoulder treatment. On February 16, 2009, Plaintiff saw Dr. Kissenberth with complaints of intermittent pain of an 8/10. Tr. at 948. Dr. Kissenberth determined Plaintiff was not yet at the point of needing shoulder-replacement surgery. *Id.* He observed that Plaintiff had a painful click throughout his shoulder's arc of motion,

16

ordered x-rays, and determined he would operate again, performing a repeat arthroscopy, debridement, and releases as indicated. Tr. at 949.

On February 19, 2009, Dr. Kissenberth manipulated Plaintiff's shoulder operatively, performed lysis of adhesions and labral debridement, which Plaintiff tolerated well. Tr. at 954–55. On March 16, 2009, Plaintiff followed up with Dr. Kissenberth and reported the February 2009 surgery helped him significantly. Tr. at 1011. Dr. Kissenberth found Plaintiff's shoulder had almost a full range of motion with minimal clicking. Tr. at 1012. Dr. Kissenberth informed Plaintiff he could have persistent left shoulder pain and prescribed Lortab. *Id.* Dr. Kissenberth also told Plaintiff his shoulder could require some future arthroplasty work, and instructed him to return on an as-needed basis. *Id.*

The record does not include additional treatment records from Dr. Kissenberth, and the court is unaware of an opinion of Dr. Kissenberth regarding Plaintiff's RFC prior to the November 2009 Medical Source Statement presented to the Appeals Council.

2.      The ALJ's Findings Regarding Plaintiff's Shoulder

The ALJ limited Plaintiff to sedentary work with additional restrictions, including that a finding that he could never engage in bilateral overhead reaching. Tr. at 20–21. In his decision, the ALJ recounted Plaintiff's medical history, including some of his 2008 and 2009 treatment by Dr. Kissenberth. Tr. at 15–22. He particularly referenced Plaintiff's July 2008 left shoulder surgery and notes from Plaintiff's later visits to Dr. Kissenberth, including Dr. Kissenberth's March 2009 treatment notes. Tr. at 18, 22.

17

3.    Dr. Kissenberth's November 2009 Opinion

The additional evidence Plaintiff submitted to the Appeals Council included the November 6, 2009 Medical Source Statement of Ability to Do Work-Related Activities (Physical) of Dr. Kissenberth, Plaintiff's treating orthopedist.[9] Tr. at 1182–85. Dr. Kissenberth found Plaintiff could lift/carry up to 20 pounds occasionally and ten pounds frequently. Tr. at 1182. He opined Plaintiff's ability to push/pull was limited in his upper extremities, which he explained meant Plaintiff could not perform any lifting with his left shoulder. Tr. at 1183. Dr. Kissenberth also opined that Plaintiff could never crawl or climb, but could occasionally balance, kneel, crouch, and stoop. *Id.* He found Plaintiff could not reach in any direction, including overhead, could handle (gross manipulation) occasionally, and he placed no limits on Plaintiff's ability to finger and feel. Tr. at 1184.

4.    The Appeals Council Should Have Explained Its Consideration of the Additional Evidence

The Commissioner's regulations provide that the Appeals Council will review additional evidence under some circumstances:

(b)    If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the

---

[9]Although Plaintiff submitted other records to the Appeals Council, he focuses his argument on Dr. Kissenberth's November 2009 Medical Source Statement only. *See* Tr. at 4–5 (Appeals Council's ex. list and order incorporating additional evidence into record); 279–81 (May 4, 2010 brief to Appeals Council, which was added to record); 1156–1203 (the additional evidence).

> period on or before the date of the administrative law judge hearing
> decision. It will then review the case if it finds that the administrative
> law judge's action, findings, or conclusion is contrary to the weight
> of the evidence currently of record.

20 C.F.R. § 404.970. In order to be "new" evidence, the evidence must not be

"duplicative or cumulative," and in order to be "material," there must be a "reasonable

possibility that it would have changed the outcome." *Wilkins v. Sec'y, Dep't of Health &*

*Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (*en banc*).

Here, the Appeals Council indicated it considered the additional evidence, but

declined further review, stating that it "found this information [did] not provide a basis

for changing the [ALJ's] decision." Tr. at 1–2.

Plaintiff argues that the Appeals Council should have made findings regarding

how it determined to not further review the evidence because, without such findings, the

court will be unable to undertake appropriate judicial review. Pl.'s Br. at 28–29. Plaintiff

submits that Dr. Kissenberth's records indicate Plaintiff's arm and shoulder function were

limited and argues that the additional evidence submitted to the Appeals Council makes

such limitations "crystal clear." Pl.'s Br. at 20 & n.9. He also points to the VE's October

23, 2009 testimony as making it clear that the "slightest limitation in function in one of

[Plaintiff's] shoulders at any level below overhead is going to leave no jobs [that Plaintiff

could perform]." *Id.* at 16, n.3.

The Commissioner defended the Appeals Council's treatment of the additional

evidence, arguing that the Appeals Council was not required to make findings regarding

19

the evidence. Def.'s Br. at 20. Further, he argues that the finding that Plaintiff was not disabled is supported by substantial evidence and that the court should consider the additional record evidence in considering this appeal. *Id.* The Commissioner also argues that Dr. Kissenberth's opinion was "essentially already incorporated into the ALJ's RFC finding that Plaintiff could never engage in bilateral reaching." *Id.* at 21. Because the additional evidence was "not that different from that before the ALJ," the Commissioner argues the court should not remand this matter to the Appeals Council.

The undersigned acknowledges there are conflicting opinions within the Fourth Circuit and district courts in the circuit regarding what the Appeals Council must do when reviewing additional evidence. Having reviewed these cases, the undersigned agrees with Plaintiff. "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983). For the court to consider the additional evidence itself would necessarily require the court to speculate as to whether the ALJ's findings are based on substantial evidence, which it must not do. *See, e.g., Belue v. Astrue*, 1:09-942-MBS, 2010 WL 3734714, *2 (D.S.C. Sept. 20, 2010).

Although the Commissioner spends little time on this argument, he suggests that the additional evidence need not be considered because it was rendered nearly a year after Plaintiff's insured status expired, meaning it is not new and material and does not relate to the period at issue. Def.'s Br. at 20. Based on its review of the record, including the additional opinion of Dr. Kissenberth, and the ALJ's decision, the court cannot

20

recommend dismissal of this issue on the ground that the 2009 opinion does not relate to the period at issue. Here, in finding Plaintiff was not disabled, the ALJ discussed some of Plaintiff's 2009 visits to Dr. Kissenberth, as well as his activities just prior to the April 2009 hearing. *See* Tr. at 18, 22. On these facts, the court cannot recommend a finding that the November 2009 opinion could not be material or new.

Additionally, in *Wilkins*, claimant submitted to the Appeals Council an additional opinion from her physician that post-dated the period being considered by the ALJ in his decision. 953 F.2d at 94–96. The court found that evidence related to the period at issue. *Id.* at 96. In addition, making the determination the additional evidence was not "new" under these facts could be tantamount to improper conjecture regarding why the Appeals Council did what it did. *Cf. Allen v. Bowen*, 816 F.2d 600, 601 (11th Cir. 1987) (finding Appeals Council "could surmise" rebuttal evidence was not "new" for purposes of whether it needed to consider when claimant requested review of ALJ's decision).

Having reviewed the record evidence, including Dr. Kissenberth's November 2009 opinion, the undersigned is of the opinion that his November 2009 Medical Source Statement is new, material, and relates to the period at issue under 20 C.F.R. § 404.970(b). The evidence provides additional information regarding Plaintiff's DIB claim, particularly regarding the ALJ's findings regarding Plaintiff's nonexertional limitations on his upper extremities. The court notes that the VE's somewhat confusing testimony in response to the ALJ's various hypothetical questions does, as Plaintiff argues, seem to turn on the extent Plaintiff's shoulder was limited. Compare Tr. at 46–48

(VE opining there would be no jobs if Plaintiff could not lift his shoulder more than occasionally) with Tr. at 51–52 (VE finding there were jobs Plaintiff could perform if Plaintiff could frequently use his upper extremities with no overhead reaching bilaterally).

In this and all appeals of disability determinations by the Commissioner, the district court's role is to determine whether substantial evidence supports the Commissioner's decision. The court is not to weigh the evidence or substitute its own judgment for that of the Commissioner. *See, e.g., Hays*, 907 F.2d at 1456. In conducting its review, the court needs to understand the Commissioner's rationale for its findings. "'When this court is left in the dark as to how the Appeals Council treated the new evidence, a meaningful judicial review is impossible. The court is left with no findings from the agency, be they from the ALJ or the Appeals Council, regarding that new evidence.'" *Harmon v. Apfel*, 103 F. Supp 2d 869, 874 (D.S.C. 2000) (*quoting Riley v. Apfel*, 88 F. Supp. 2d, 572, 579–80 (W.D. Va. 2000)); *see also Suber v. Astrue*, 640 F. Supp. 2d 684, 688 (D.S.C. 2009); *Willingham v. Astrue*, 2:09-3244-RMG, 2010 WL 5173875 (D.S.C. Dec. 15, 2010) ("The failure of the Appeals Council to make any findings regarding the newly presented evidence and the weight afforded the evidence presents a real problem for the Court in exercising its duty to undertake a meaningful judicial review of the administrative decision in this matter."); *Roberts v. Astrue*, 0:09-1607-JFA, 2010 WL 2522995, *5–6 (D.S.C. May 14, 2010); *Chapman v. Astrue*, 07-2868-TLW, 2010 WL 419923, *12 (D.S.C. Jan. 29, 2010); *Raymond v. Astrue*, 2:08-974-SB, 2009 WL 632317 * 5 (D.S.C. Mar. 11, 2009) ("When neither an

administrative law judge nor the Appeals Council indicate the weight accorded new evidence, a remand is proper."); *Alexander v. Apfel*, 14 F. Supp 2d 839, 843 (W.D. Va. 1998).

As now-Chief Judge David C. Norton noted in *Harmon*, without articulated findings by the Appeals Council, "the court is caught between trying to provide meaningful judicial review of evidence not considered by the fact finder, while avoiding actually performing the task of weighing and resolving conflicts in the evidence, which is, of course, the function of the ALJ." 103 F. Supp 2d at 872. Judge Norton acknowledged that the court's reviewing role is difficult to reconcile with the Fourth Circuit's directive from *Wilkins* that requires the court to consider evidence submitted to the Appeals Council and incorporated into the record. 103 F. Supp. 2d at 874 (*citing Wilkins*, 953 F.2d at 96); *see also Jordan v. Califano*, 582 F.2d 1333, 1335 (4th Cir. 1978) ("A bald conclusion unsupported by reasoning or evidence, is generally of no use to a reviewing court.").

In *Wilkin*s, the Fourth Circuit held that the Appeals Council is "required to consider new and material evidence relating to the period on or before the date of the ALJ decision in deciding whether to grant review." 953 F.2d at 95. If the Appeals Council considered additional evidence and placed it into the record, the court is to "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." *Id.* at 96.

Because the court should not weigh the evidence itself, remand is appropriate here.

23

5.    A Pending Fourth Circuit Appeal Should Not Delay This Decision

In the alternative, the Commissioner argues that, if the court does not agree with his position on this issue, the court should withhold its decision in this matter pending the Fourth Circuit's determination in *Meyer v. Astrue*, No. 10–1581. Def.'s Br. at 22, n.15. The Commissioner indicates oral argument had been scheduled, and that the Fourth Circuit has been asked to clarify its position on "this very issue." *Id.* Plaintiff submits it would be inappropriate for the court to withhold its ruling for this reason. Pl.'s Reply at 9.

The court agrees with Plaintiff. The district court's decision in *Meyer v. Astrue*, 3:08–3828–JFA–JRM, 2010 WL 1257626 (D.S.C. March 25, 2010), was based on the facts and circumstances of that case. The undersigned cannot predict that any decision by the Fourth Circuit will directly impact this matter and recommends the court decline to hold this decision in abeyance.

Based on this recommendation, the undersigned does not discuss the parties' other contentions.

III.    Conclusion and Recommendation

Based on the foregoing, the undersigned recommends that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action as set out herein.

IT IS SO RECOMMENDED.

November 23, 2011                         Shiva V. Hodges
Florence, South Carolina                  United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**